NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0435n.06

No. 12-6018

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Apr 30, 2013

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GARY COLYER, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| TRAVELER'S INSURANCE COMPANY, a | ) | **O P I N I O N** |
| foreign corporation; TRAVELER'S LIFE AND | ) | |
| ANNUITY COMPANY, a foreign corporation, | ) | |
| | ) | |
| *Defendants,* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TRAVELER'S INDEMNITY COMPANY, a | ) | |
| foreign corporation, | ) | |
| | ) | |
| *Defendant - Appellee.* | ) | |

BEFORE:  CLAY and COOK, Circuit Judges; and OLIVER, District Judge.[*]

SOLOMON OLIVER, JR., Chief District Judge. Plaintiff-Appellant Gary Colyer ("Colyer") appeals the order of the district court denying him summary judgment on his claim of breach of settlement agreement and granting summary judgment to Defendants Travelers Insurance Company, Travelers Life and Annuity Company, and Travelers Indemnity Company (together, "Travelers") on the same claim.  For the following reasons, we **AFFIRM** the decision of the district court.

---

[*]The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A.    Procedural History

On June 28, 2010, Plaintiff filed suit in the United States District Court for the Eastern District of Kentucky against Travelers.  Plaintiff's Amended Complaint asserts a claim for breach of a settlement agreement against Travelers, and breach of annuity contract against MetLife Insurance Company of Connecticut ("MetLife"), who was added as a defendant on October 7, 2010. On December 13, 2010, the district court in these proceedings entered default judgment against MetLife upon Plaintiff's motion because MetLife had allegedly failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure.  (Default J. Order, Dist. Ct. Dkt, ECF No. 19.) MetLife then moved to set aside the entry of default, which the court granted. (Order, Dist. Ct. Dkt., ECF No. 31.)  On July 30, 2012, the United States District Court for the Eastern District of Kentucky granted all Defendants' motions for summary judgment on all claims, and denied Plaintiff summary judgment on all claims.  (Order and Judgment, Dist. Ct. Dkt, ECF Nos. 66, 67.)

The district court granted Defendant Travelers' motion in regard to the breach of the settlement agreement claim, finding that Travelers did not breach its agreement with Colyer when it did not challenge a state court's order of garnishment of an annuity, payable to Colyer, that Travelers had purchased as part of the settlement agreement.  (*Id.* at 8.)  The district court also found that Travelers did not have a duty to challenge the garnishment order under Kentucky law, and that in general a garnishee may not claim an exemption to a garnishment order under Kentucky law. (*Id.* at 6.)  The court found that, contrary to Plaintiff-Appellant's assertion, the case of *J.G. Wentworth v. Jones*, 28 S.W.3d 309 (Ky. Ct. App. 2000), did not control in this case, and did not "stand for the proposition that the owner of an annuity has a duty or obligation, either implied or expressed, to

2

assert the defenses afforded a judgment debtor." (*Id.* at 8.)  The court also found that Travelers had not breached its settlement with Colyer when they did not intervene to stop the garnishment of the annuity.  (*Id.* at 9.)  Finally, the court noted that the garnishment orders were regular in form, and that if Colyer believed that the annuity was not subject to a proper garnishment order, the court would not have jurisdiction to review the garnishment orders under the *Rooker-Feldman* doctrine. (*Id.* at 10.)

On August 28, 2012, Plaintiff timely appealed the district court's Order granting summary judgment to Travelers and Metlife.  On November 9, 2012, MetLife was dismissed from the appeal upon stipulation of the parties.

**B. Factual History**

1. The Settlement Agreement

Plaintiff, a former resident of Kentucky, was seriously injured in an automobile accident in November 1990 in Pulaski County, Kentucky.  (Appellant Br. at 3.)  Plaintiff sued the tortfeasor driver and his insurance company, Defendant Travelers Insurance Company, in the London Division of the United States District Court for the Eastern District of Kentucky.  (*Id.*)  The suit was settled, and Plaintiff agreed to a structured settlement with Travelers Insurance Company that was to pay him one thousand dollars ($1,000.00) for life or a maximum of thirty years (the "Settlement Agreement" or "Agreement").  (*Id.*)  As part of the Settlement Agreement, Travelers Insurance Company was allowed to purchase an annuity to fund its obligation to Plaintiff.  (*Id.*)  The specific contractual provision regarding the annuity stated, in relevant part:

> Travelers shall be the owner of any such annuity policy and shall have all rights of ownership.  The principal beneficiary of such annuity policy shall be the plaintiff Gary Colyer although he shall not be the owner of the policy.

3

...Travelers shall have the annuity carrier mail payments directly to the plaintiff Gary Colyer, if living, or if deceased, then to such person or entity as shall be entitled to them.

In the event that Travelers purchases an annuity contract pursuant to the previous paragraph, then Travelers shall remain liable for, and guarantee the payments of, all amounts due under this agreement until all amounts have been paid in full.

The plaintiff Gary Colyer hereby acknowledges that the periodic payments described above cannot be accelerated, deferred, increased or decreased nor shall plaintiff Gary Colyer, or any payee have the power to sell, mortgage, encumber or anticipate the periodic payments, or any part thereof, by assignment or otherwise.

(*Id.* at 4.) Travelers exercised this option, and purchased an annuity from Travelers Life and Annuity Company[1] to be paid according to the terms of the Settlement Agreement. (*Id.*) The payments began in January 1993. (*Id.*)

### 2. The Walk N Vision Case

In 1988, Plaintiff partnered with former Kentucky Governor Julian Carroll ("Carroll") to form Walk N Vision, Inc., a software company targeting video advertising at shopping mall customers. (Appellee Br. at 7.) The company was soon failing, and Carroll signed nine separate promissory notes guaranteeing Walk N Vision's debt. (*Id.*) At Carroll's demand, Colyer also signed a promissory note guaranteeing half of any debt incurred by Walk N Vision. (*Id.*) Colyer later moved away from Kentucky, leaving Carroll liable for the entirety of Walk N Vision's corporate debt. (*Id.*) Walk N Vision failed four months later, leaving a total corporate debt of $158,782.56. (*Id.* at 8.) Carroll satisfied the entire debt using personal funds. (*Id.*)

---

[1] The annuity was purchased from Travelers Life and Annuity Company, which was at that time a part of Travelers. Travelers Life and Annuity Company was later acquired by MetLife, and then merged into MetLife, along with Travelers Insurance Company. After the merger, the annuity became MetLife's obligation.

In February 1993, Carroll sued Colyer in Franklin Circuit Court, Kentucky, seeking damages for half of Walk N Vision's corporate debt. (*Id.* at 9.) After a bench trial, the Franklin Circuit Court entered judgment for Carroll, granting him $79,391.28 in damages, with interest. (*Id.*) Carroll subsequently filed for a writ of garnishment against Colyer's annuity payments, and the Franklin Circuit Court issued a garnishment order for the same amount and served it on Travelers Life and Annuity Company on August 22, 1995. (*Id.*) The order required annuity payments of $1,000 to be made directly to Carroll. (*Id.* at 9–10.) Travelers Life and Annuity Company complied with the order. (*Id.* at 10.) The garnishment order included a legal notice sent to Colyer, as the judgment debtor, which stated that if any funds were exempt from garnishment, he was to "claim and prove any applicable exemption." (*Id.*) Colyer did not challenge the garnishment order at the time. (*Id.*)

### 3. The Garnishment Order

In August 2006, Colyer moved the Franklin Circuit Court to set aside the garnishment order, which the court did. (*Id.* at 11.) At this point, MetLife was the issuer of the annuity, and it made a $1,000 payment to Colyer in September 2006. (*Id.*) Carroll then moved to reinstate the garnishment. (*Id.*) In response, MetLife withheld further annuity payments until the Franklin Circuit Court could address Carroll's motion. (*Id.*) Nearly a year after Carroll's motion, the court reinstated the garnishment, but at a reduced rate of $650 a month. (*Id.*) In November 2008, the court reduced the garnishment further, this time to $250 a month. (*Id.*)

In May 2009, MetLife was still withholding payments, so Colyer and Carroll reached a settlement over the annuity payments withheld by MetLife between October 2006 and June 2009. (*Id.*) Pursuant to that settlement, MetLife made lump sum payments of $16,000 to both Colyer and Carroll. (*Id.*) Colyer and Carroll also agreed to an arrangement by which MetLife was to pay Colyer

$700 a month and Carroll $300 a month from the annuity until either Colyer's death or February 2033, whichever came first. (*Id.*)

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo.* *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the moving parties, Defendants bear the burden of showing the absence of a genuine issue of material fact as to at least one essential element on each of Plaintiffs' claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Plaintiffs, as the non-moving parties, must then present sufficient evidence from which a jury could reasonably find for them. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In making this determination, the court must draw all reasonable inferences in favor of Plaintiffs. *See Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997).

## III. LAW AND ANALYSIS

### A. Jurisdiction

Travelers contends that the district court lacked subject matter jurisdiction over the case below because Colyer sought review of a final judgment of a state court. (Appellee Br. at 17.) Under the *Rooker-Feldman* doctrine, "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S.

6

280 (2005), the Supreme Court clarified that the *Rooker-Feldman* doctrine divested a United States district court only in "limited circumstances." *Exxon Mobil*, 544 U.S. at 291. The Court emphasized that *Rooker-Feldman* does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. Since *Exxon Mobil*, our court has "tightened the scope of *Rooker-Feldman*." *Kovacic v. Cuyahoga County Dep't of Children & Family Servs.*, 606 F.3d 301, 309 (6th Cir. 2010) (citations omitted). In *Kovacic*, we reemphasized that "the pertinent inquiry after *Exxon* is whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment, not simply whether the injury complained of is 'inextricably intertwined' with the state-court judgment." *Kovacic*, 606 F.3d at 309 (citing *McCormick v. Braverman*, 451 F.3d 382, 393–95 (6th Cir. 2006)).

Defendants state that the district court "held" that *Rooker-Feldman* meant it did not have subject matter jurisdiction over this case. (Appellee Br. at 17.) This is incorrect. The district court merely stated at the end of its order that "if Colyer believes '[t]he annuity was not subject to garnishment, and the order was invalid on its face,' then he is better off making such arguments in state court because 'a United States District Court has no authority to review final judgments of a state court in judicial proceedings.'" (Order, Dist. Ct. Dkt, ECF No. 66 (citing *Feldman*, 460 U.S. at 482)). The district court included this statement to explain that if Colyer wanted relief from the garnishment order itself, such relief was not available in the district court. The gravamen of the district court's order was that Travelers had not breached the Settlement Agreement, and that it did not have a duty to intervene against the garnishment order and claim an exemption for Colyer. Colyer's suit was a breach of contract claim, and not an "appeal" from the state court's garnishment

7

order.  Therefore, the *Rooker-Feldman* doctrine did not bar the district court from hearing Plaintiff's claims.

Defendants also contend that the district court did not have jurisdiction over Plaintiff's suit because Plaintiff did not at any time state that the federal court "retained jurisdiction" under the Settlement Agreement.  (Appellee Br. at 20.)  Defendants rely on *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994), in which the Supreme Court held that a settlement agreement leading to dismissal of a case in federal court could only be enforced in a state court, unless there remained an "independent basis for jurisdiction" or the settlement contained a "retaining jurisdiction" clause. *Kokkonen*, 511 U.S. at 376–77, 381.  However, we have previously explained that *Kokkonen* does not divest federal courts of jurisdiction over the enforcement of such settlements where there is diversity jurisdiction over the settlement enforcement.  *Limbright v. Hofmeister*, 566 F.3d 672, 676 (6th Cir. 2009) ("Given this context, *Kokkonen*'s failure to consider diversity jurisdiction explicitly likely reflects the obvious lack of the required amount in controversy (the enforcement action at issue sought only the return of certain files), not a hidden intent to preclude summary enforcement based on diversity jurisdiction.").  The district court had diversity jurisdiction over this case under 28 U.S.C. § 1332, as it is undisputed that Colyer and Travelers are from different states (Florida and Kentucky, respectively), and the amount in controversy was greater than $75,000.  Plaintiff stated as much in his Complaint.  (Compl, Dist. Ct. Dkt, ECF No. 1.) Defendants have raised no issues regarding diversity jurisdiction. Therefore, Defendants' argument that the Settlement Agreement did not contain a 'retaining jurisdiction clause' is of no consequence.

**B. Breach of Settlement Agreement**

Plaintiff contends that Travelers breached the Settlement Agreement when he did not receive the agreed-upon payments as required. (Appellant Br. at 8.) Plaintiff focuses on the language of the agreement, which states that appellee "*shall* have the annuity carrier mail payments directly to appellant." (*Id.*) (emphasis added.) Plaintiff contends that this was a "mandatory duty" under the Agreement, and that the only exception to this duty was Plaintiff's death, which has not happened. (*Id.*) Plaintiff also points to language in the Agreement stating that appellee "*shall* remain liable for, and guarantee the payments of all amounts due under the Settlement Agreement until all such amounts have been paid in full." (*Id.* at 9.) Again, Plaintiff contends that his was a "mandatory duty" under the Agreement. (*Id.*)

Defendants argue in response that Travelers reserved the right under the Agreement to purchase an annuity to fund its obligation to Plaintiff, which it did. (Appellee Br. at 35.) They state that the Settlement Agreement and the Annuity were "inextricably linked," and that they had no duty under the Agreement to stop the payments to Carroll pursuant to the garnishment order. (*Id.* at 36)

The district court correctly found that Travelers continued to uphold its end of the Settlement Agreement. Travelers bought the annuity from Travelers Life and Annuity Company (later MetLife), and was the owner of the annuity. When the Franklin Circuit Court issued the garnishment order, MetLife was obligated to comply with it. Under Kentucky Law, when a person complies with a valid court order, compliance is privileged and does not result in liability "so long as that person exercises reasonable care to give timely notice to the owner of that property, so that the owner may have the opportunity to protect his interests." *American States Ins. Co. v. Citizens Fidelity Bank & Trust Co.*, 662 S.W.2d 851, 853 (Ky. Ct. App. 1983). A valid court order requires three things: "(1)

9

it must be regular in form, (2) it must be issued by a court having authority to issue the particular order and having jurisdiction over the personal property described in it, and (3) all proceedings required for its proper issuance must have duly taken place." *Id.* Here, Plaintiff has not put forward any evidence that the garnishment order was not a valid court order. Further, Plaintiff had notice of the order from the Franklin Circuit Court. Therefore, MetLife properly complied with the garnishment order, and Travelers did not breach its Agreement with Colyer by refusing to comply with the order.

### C. Duty to Claim Exemption

Plaintiff next argues that even if Travelers did not breach the Agreement, it had a duty to stop the garnishment of the MetLife annuity by claiming an exemption under Ky. Rev. Stat. § 425.501. Plaintiff relies on *J.G. Wentworth* for his argument, stating that the case stands for the propositions: "(1) that tort victims retain no interest susceptible of assignment in structured settlement annuity payments; (2) that such payments by insurance companies are exempt from garnishment pursuant to state code and public policy; and (3) an insurer issuing such an annuity faces a justiciable controversy and as such has standing to assert that the annuity proceeds are exempt from execution." (Appellant Br. at 10.) From this, Plaintiff argues, Travelers had a duty to assert that the annuity proceeds are exempt from execution of the garnishment order.

Defendants argue that while they may have had standing to assert the exemptions under Ky. Rev. Stat. § 425.501 and *J.G. Wentworth*, they did not have a duty to do so. (Appellee Br. at 27.) Primarily, Defendants maintain that the law in Kentucky has always been that only a judgment debtor, in this case Colyer, may claim such an exemption. (*Id.* at 24.)

10

Under Ky. Rev. Stat.§ 425.501, a judgment debtor "may appear and claim the exemption of any property or debt that is exempt from execution, and on proof of exemption the garnishment shall be discharged as to the exempt property or debt." Ky. Rev. Stat. § 425.501(4). Further,

> [i]f the court finds that the garnishee was, at the time of service of the order upon him, possessed of any property of the judgment debtor, or was indebted to him, and the property or debt is not exempt from execution, the court shall order the property or the proceeds of the debt applied upon the judgment.

Ky. Rev. Stat. 425.501(5). Annuities payable to judgment debtors are exempt from garnishment at a rate of up to $350 per month. Ky. Rev. Stat. § 304.14-330(b). If the annuity payments total more than $350 per month, then

> the court may order such annuitant to pay a judgment creditor or apply on the judgment, in installments, such portion of such excess benefits as to the court may appear just and proper after due regard for the reasonable requirements of the judgment debtor and his family, if dependent upon him, as well as any payments required to be made by the annuitant to other creditors under prior court orders.

Ky. Rev. Stat. § 304.14-330(c).

Kentucky courts have generally interpreted Ky. Rev. Stat. § 425.501 to mean that exemptions to garnishment orders may only be claimed by the judgment debtor and "not by another for his benefit." *Central Supply of Virginia, Inc. v. Commonwealth Life Ins. Co.*, 787 S.W.2d 273, 274 (Ky. Ct. App. 1990). In *J.G. Wentworth*, however, the Kentucky Court of Appeals held that the owner of an annuity, payable to a judgment debtor, had standing to claim an exemption under Ky. Rev. Stat. § 425.501 and § 304.13-330 on behalf of the judgment debtor. *J. G. Wentworth*, 28 S.W.3d at 316. In that case, the court distinguished *Central Supply of Virginia*'s rule on standing because the owner of the annuity was not faced with a single payment of insurance but an "ongoing barrage of continuing garnishments." *Id. J.G. Wentworth* may stand for the proposition that Travelers could

11

have standing to claim an exemption from the garnishment of the annuity payments to Colyer in this case. Though the facts of *J.G. Wentworth* are vastly different than in this case, Travelers would have been subject to "continuing garnishments" over the time it would have taken for Colyer's debt to Carroll to be paid back. However, we need not decide this issue. Plaintiff's argument does not simply ask the court to hold that Travelers had standing to claim an exemption on his behalf. Plaintiff insists that a garnishee's having standing to claim an exemption to a garnishment order creates a duty to claim such an exemption. (Appellant Reply Br. at 7.) However, having standing to assert a claim does not create a duty to assert that claim. Plaintiff offers no supporting cases for his proposition, but implies that one follows from the other. We have not found any Kentucky law standing for this proposition. Nothing in the *J.G. Wentworth* opinion indicates that the court in that case intended to create such a duty.

In addition, Plaintiff argues in reply that even if Travelers did not have a duty to claim an exemption on his behalf, it did have a duty to determine whether the property sought to be garnished belonged to him in the first place. (*Id.* at 8.) However, Plaintiff again offers no support for this proposition. Accordingly, we affirm the district court's granting of summary judgment to Defendants on the issue of whether Travelers had a duty to claim an exemption to the garnishment of his annuity payments.

**D. Damages**

Plaintiff finally asks the court to compute the amount of damages and interest he is owed. As we hold that the district court correctly granted summary judgment to Defendants, we need not address this issue.

12

## IV.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court with respect to its granting of summary judgment to Defendants on all claims.